AES:JN
F. #2020R00016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -

LUIS ENRIQUE MARTINELLI LINARES
and RICARDO ALBERTO MARTINELLI
LINARES,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

AMENDED COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR ARREST WARRANTS

(T. 18, U.S.C., §§ 1956(a)(1)(B)(i), 1956(h), 1957 and 2)

No. 20-M-498

EASTERN DISTRICT OF NEW YORK, SS:

  MICHAEL LEWANDOWSKI, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.[1]

  Upon information and belief, in or about and between August 2009 and September 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES, together with others, did knowingly and intentionally conspire to commit offenses under Title 18, United States Code, Sections 1956 and 1957, to wit:

---

[1] On June 27, 2020, the Honorable Robert M. Levy signed a complaint and arrest warrants for the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES charging them with violations of Title 18, United States Code, Section 1956(h).  This amended complaint adds charges for violations of Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1957 and 2.

(a) to transport, transmit, and transfer, and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, to wit: an offense against a foreign nation involving bribery of a public official, in violation of the Penal Code of the Republic of Panama; contrary to Title 18, United States Code, Section 1956(a)(2)(A);

(b) to conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity, to wit: an offense against a foreign nation involving bribery of a public official, in violation of the Penal Code of the Republic of Panama; knowing that the property involved represented proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity; contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(c) to engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, to wit: an offense against a foreign nation involving bribery of a public official, in violation of the Penal Code of the Republic of Panama; contrary to Title 18, United States Code, Section 1957.

(Title 18, United States Code, Section 1956(h))

Upon information and belief, on or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants LUIS ENRIQUE MARTINELLI

LINARES and RICARDO ALBERTO MARTINELLI LINARES, together with others, did knowingly and intentionally conduct and attempt to conduct a financial transaction representing the proceeds of specified unlawful activity, to wit: an offense against a foreign nation involving bribery of a public official, in violation of the Penal Code of the Republic of Panama; knowing that the property involved represented proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity, as follows:

| Date | Wire |
| --- | --- |
| November 12, 2013 | Wire transfer of $899,978.32 from Bank 1, through accounts at Bank 8 in New York, New York, to Bank 5 |
| December 10, 2013 | Wire transfer of $30,887.21 from Bank 1, through accounts at Bank 8 in New York, New York, to Bank 5 |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2)

Upon information and belief, on or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant LUIS ENRIQUE MARTINELLI LINARES, together with others, did knowingly and intentionally engage and attempt to engage in a monetary transaction by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, to wit: an offense against a foreign nation involving bribery of a public official, in violation of the Penal Code of the Republic of Panama, as follows:

| Date | Wire |
|---|---|
| February 11, 2013 | Wire transfer of $346,500.00 from Bank 2, through an account in New York, New York, at Bank 6, to an account in New Jersey at Bank 9 |
| August 26, 2015 | Wire transfer of $570,000.00 from Bank 2, through an account in New York, New York, at Bank 6, to an account in Florida at Bank 6 |

(Title 18, United States Code, Sections 1957 and 2)

The source of your deponent's information and the grounds for his belief are as follows:

1.\few I have been a Special Agent with the FBI since 2010. I am currently assigned to the International Corruption Unit at the FBI's New York Division, and I have received training in foreign bribery, kleptocracy, money laundering, fraud and other white-collar crimes. During my career as an FBI Special Agent, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

2. I am familiar with the information contained in this affidavit based on: (a) my personal knowledge; (b) witness interviews, including statements from cooperating witnesses who have been corroborated and found to be reliable; (c) my review of documents and other evidence; (d) my communications with other law enforcement personnel; and (e) my training and experience.

3. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest the defendants, I have not set forth each and every fact

learned during the course of this investigation. Instead, I have set forth only those facts that I believe are necessary to establish probable cause for the arrest warrants sought herein. In addition, where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

I. The Defendants and Relevant Entities and Individuals

4. The defendant LUIS ENRIQUE MARTINELLI LINARES (also referred to herein as "LUIS MARTINELLI") was a citizen of Panama and Italy. He was the brother of the defendant RICARDO ALBERTO MARTINELLI LINARES. During the course of the conspiracy, LUIS MARTINELLI travelled several times to the United States.

5. The defendant RICARDO ALBERTO MARTINELLI LINARES (also referred to herein as "RICARDO MARTINELLI LINARES") was a citizen of Panama and Italy. He was the brother of the defendant LUIS ENRIQUE MARTINELLI LINARES. During the course of the conspiracy, RICARDO MARTINELLI LINARES travelled several times to the United States.

6. The Panama Government Official[2] was a high-ranking government official in Panama from in or about 2009 until in or about 2014. The Panama Government Official was a "public servant" as that term is defined in the Penal Code of the Republic of Panama ("Panama Penal Code"). The defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES were close relatives of the Panama Government Official.

---

[2] Certain entities' and individuals' names have been anonymized for the purposes of this criminal complaint. The identity of each of these entities and individuals is known to me.

7.      Odebrecht S.A. was a Brazilian holding company that, through its subsidiaries and companies in which it was a majority shareholder (collectively "Odebrecht" or the "Company"), conducted business in multiple industries, including engineering, construction, infrastructure, energy, chemicals, utilities and real estate.  Odebrecht had its headquarters in Salvador, state of Bahia, Brazil, and operated in at least 27 other countries, including the United States.

8.      "Offshore Company A" was a British Virgin Islands corporation.

9.      "Offshore Company B" was a British Virgin Islands corporation.

10.     "Offshore Company C" was a British Virgin Islands corporation.

11.     "Offshore Company D" was a Bahamian corporation.

12.     "Offshore Company E," "Offshore Company F," "Offshore Company G," "Offshore Company H," and "Offshore Company I" were all corporate entities.

13.     "Bank 1" was a financial institution located in Switzerland.

14.     "Bank 2" was a financial institution located in Switzerland.

15.     "Bank 3" was a financial institution located in Switzerland.

16.     "Bank 4" was a financial institution located in Switzerland.

17.     "Bank 5" was a financial institution located in Switzerland.

18.     "Bank 6" was a U.S. bank that held correspondent accounts in New York, New York.

19.     "Bank 7" was a U.S. bank that held correspondent accounts in New York, New York.

20. "Bank 8" was a U.S. bank that held correspondent accounts in New York, New York.

21. "Bank 9" was a U.S. bank.

II. Panama Penal Code

22. The Panama Penal Code made it a criminal offense to bribe a public servant and provided, in relevant part: "Whoever, by any means, offers, promises or delivers to a public servant a donation, promise, money or any other benefit or advantage to perform, delay or omit any act proper to his position or employment or in violation of his obligations, will be punished with imprisonment of three to six years."

III. The Criminal Scheme

    A. Overview of the Odebrecht Bribery Scheme

23. On December 21, 2016, Odebrecht S.A. pleaded guilty in the Eastern District of New York to a one-count criminal information charging it with conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act, in violation of 18 U.S.C. § 371 and 15 U.S.C. § 78dd-3. *See* ECF Docket No. 16-CR- 643. As part of its plea agreement, Odebrecht S.A. admitted that, in or about and between 2001 and 2016, Odebrecht, through certain of its employees and agents, and together with other co-conspirators, engaged in a massive bribery scheme in which the co-conspirators agreed with others to corruptly pay over $700 million in bribes to, and for the benefit of, public servants, foreign officials, foreign political parties, foreign political party officials and foreign political candidates to obtain and retain business and to gain an advantage and benefit from the public servants and foreign officials in various countries around the world, including public officials and public servants in

7

Panama. Odebrecht's bribery scheme included corrupt payments and the provision of other things of value.

24. Odebrecht concealed the nature, source, ownership and control of the proceeds of the bribery scheme by funneling the proceeds of the scheme through offshore shell company bank accounts to the ultimate beneficiaries of the bribes, namely, public servants, foreign officials, foreign political parties, foreign political candidates and their representatives.

25. Odebrecht, together with certain of its employees and agents, caused wire transfers to be made from Odebrecht-related bank accounts to offshore shell company bank accounts controlled by Odebrecht, including through New York-based accounts, such as those at Banks 6, 7 and 8. Funds intended for the illegal bribe payments were then transferred through multiple offshore shell company bank accounts throughout the world, including through New York-based accounts, before reaching the final bribe recipients.

26. Odebrecht used an agent in the United States to purchase offshore shell companies for Odebrecht, to send and receive documents to facilitate the establishment of offshore bank accounts in the name of offshore shell companies for Odebrecht and to send and receive documents, certain of which contained false and fraudulent information, to cause financial transactions to be conducted from offshore shell company bank accounts, including financial transactions that utilized U.S. correspondent bank accounts.

B. <u>Overview of the Defendants' Role in the Odebrecht Bribery Scheme</u>

27. In or about and between August 2009 and July 2014, the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES, together with others, participated in the Odebrecht bribery scheme by, among other things,

8

serving as intermediaries for corrupt payments and the provision of other things of value that Odebrecht offered and provided to the Panama Government Official. Among other things, LUIS MARTINELLI and RICARDO MARTINELLI LINARES established offshore bank accounts in the names of offshore shell companies to receive and disguise bribe payments from Odebrecht made for the benefit of the Panama Government Official.

28. From approximately August 2009 to September 2015, the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES, together with others, took a number of steps to open and manage secret bank accounts held in the names of shell companies in foreign jurisdictions, which were used to receive, further transfer and deliver bribe payments that Odebrecht made and caused to be made for the benefit of the Panama Government Official. Specifically, LUIS MARTINELLI and RICARDO MARTINELLI LINARES established shell companies in foreign jurisdictions; served as the signatories on certain of the shell company bank accounts; and personally sent and caused to be sent wire transfers through the structure of shell company bank accounts to conceal and spend bribery proceeds.

29. In or about and between 2009 and 2012, the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES opened bank accounts in Switzerland for the purpose of receiving, further transferring and delivering bribe payments from Odebrecht for the benefit of the Panama Government Official in the name of Offshore Company A at Bank 1, Offshore Company B and Offshore Company I at Bank 2, Offshore Company C at Bank 3, Offshore Company D at Bank 4, and Offshore Company E,

Offshore Company F, Offshore Company G and Offshore Company H, all at Bank 5 (together the "Offshore Company Accounts").

30. The purpose of opening and operating the Offshore Company Accounts was to promote, assist, facilitate, conceal and serve as intermediaries for Odebrecht's payment of bribes for the benefit of the Panama Government Official so that Odebrecht could obtain an improper business advantage and gain and retain business in Panama by causing the Panama Government Official to perform acts proper to his/her position in his/her official capacity and in violation of his/her obligations.

31. In total, in or about and between 2009 and 2012, the Offshore Company Accounts received approximately $28 million in bribe proceeds from Odebrecht for the benefit of the Panama Government Official. At least approximately $19 million of those bribe proceeds were transferred through U.S. correspondent bank accounts, including Bank 6 and Bank 7 in New York, New York, into the Offshore Company Accounts.

32. For example, financial records show that on or about July 27, 2010, a wire transfer of approximately $350,000.00 U.S. dollars were transferred from an offshore shell company bank account controlled by Odebrecht and located in Portugal to the Offshore Company A account at Bank 1, through an account at Bank 6 in New York, New York.

33. The defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES later conducted numerous additional financial transactions through U.S. banks, some of which were located in New York, New York, involving the proceeds of bribe payments from Odebrecht.

34. Financial records show that on or about February 11, 2013, the defendant LUIS ENRIQUE MARTINELLI LINARES caused the transfer of approximately $346,500.00 U.S. dollars from the Offshore Company I account at Bank 2, through an account at Bank 6 in New York, New York, to an account in New Jersey at Bank 9. Records obtained from a yacht broker in New York show that this transfer was a partial payment for the purchase of a yacht.

35. Financial records show that on or about November 12, 2013, the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES caused the transfer of approximately $899,978.32 U.S. dollars from the Offshore Company A account at Bank 1 to the Offshore Company E account at Bank 5, through accounts at Bank 8 in New York, New York.

36. Financial records show that on or about December 10, 2013, the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES caused the transfer of approximately $30,887.21 U.S. dollars from the Offshore Company A account at Bank 1 to the Offshore Company E account at Bank 5, through accounts at Bank 8 in New York, New York.

37. Financial records show that on or about August 26, 2015, the defendant LUIS ENRIQUE MARTINELLI LINARES caused the transfer of approximately $570,000.00 U.S. dollars from the Offshore Company I account at Bank 2 through an account at Bank 6 in New York, New York, to an account at Bank 6 in Florida. Title transaction records show that this transfer was a partial payment for the purchase of a condominium in Miami by a Florida corporation on behalf of LUIS MARTINELLI.

***

WHEREFORE, your deponent respectfully requests that arrest warrants be issued for the defendants LUIS ENRIQUE MARTINELLI LINARES and RICARDO ALBERTO MARTINELLI LINARES, so that they may be dealt with according to law. Your deponent further requests that the arrest warrants issued by the Honorable Robert M. Levy upon the original complaint in this matter, on June 27, 2020, remain in effect for purposes of extradition.

_____
Michael Lewandowski
Special Agent, Federal Bureau of Investigation

Sworn to before me this *telephonically*
20 __ day of July, 2020

_____
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK