

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

AES                                                         *271 Cadman Plaza East*
F. #2019R00102                         *Brooklyn, New York 11201*

November 15, 2021

<u>By Hand and ECF</u>

The Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    United States v. Luis Enrique Martinelli Linares
                  Criminal Docket No. 21-65 (RJD)

Dear Judge Henry:

        The government respectfully submits this letter in support of its request that the Court issue a permanent order of detention as to the defendant Luis Enrique Martinelli Linares ("Luis Martinelli Linares" or the "defendant"). The defendant, a citizen of Panama and Italy, was indicted for conspiracy to commit money laundering, as well as additional substantive money laundering charges, for laundering tens of millions of dollars in bribe payments on behalf of a close relative who was a high-ranking government official in Panama from 2009 until 2014 ("Panama Government Official"). The defendant also personally benefited from the scheme, receiving millions of dollars in criminal proceeds, some of which he spent on luxury items, including his own personal yacht and a Miami condominium.

        The defendant should be detained for multiple reasons, including that he has recently taken extraordinary efforts to evade prosecution in the United States. The defendant through U.S. counsel previously engaged in plea discussions with the government to resolve his exposure for this criminal conduct, but in June 2020—shortly before finalizing the details of a plea, and without notifying the government—he evaded United States border controls and slipped across the United States border to the Bahamas by boat, where he boarded a private jet in an attempt to return to Panama, a country in which he has extensive political connections and which does not extradite its citizens. When the plane was turned away from Panama due to COVID-19 travel restrictions and landed first in Costa Rica, and then El Salvador, the defendant redoubled his efforts to get to Panama. The defendant traveled by car to the Guatemala border, where he entered on invalid diplomatic credentials in an attempt to get to a private family jet that would fly him to Panama. He was arrested by Guatemalan officials based on an arrest warrant issued out of this district, and—after fighting extradition for more than a year—is finally being returned to the United States for prosecution.

As set forth more fully below, the defendant is a substantial and proven flight risk based upon: (1) the seriousness of the charged offenses charged and the overwhelming evidence that supports them; (2) his prior actions to evade prosecution in the United States; (3) the defendant's lack of ties to the United States and the Eastern District of New York, extensive financial resources and foreign political connections; and (4) his status as a citizen of Panama, which does not extradite its citizens to the United States.  See 18 U.S.C. § 3142.

I.     Background

   A.     The Offense Conduct, the Pending Charges and the Government's Evidence

The government's investigation in this case stems from a larger investigation into a massive bribery and money laundering scheme related to Brazilian holding company Odebrecht S.A. ("Odebrecht") and its subsidiary Braskem, S.A. ("Braskem"), a Brazilian petrochemical company.  Between approximately 2001 and 2016, Odebrecht paid approximately $788 million in bribes to government officials, their representatives and political parties in a number of countries in order to win business in those countries.  The criminal conduct was directed by the highest levels of the company, with the bribes paid through a complex network of shell companies, off-book transactions and offshore bank accounts.  As part of the scheme, Odebrecht and its co-conspirators created and funded an elaborate, secret financial structure within the company that operated to account for and disburse bribe payments to foreign government officials and political parties.  This structure ultimately became known as the "Division of Structured Operations" and effectively functioned as a stand-alone bribe department within Odebrecht.  On December 21, 2016, Odebrecht and Braskem pled guilty in the Eastern District of New York to separate criminal informations charging each with conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act for their role in the bribery and money laundering schemes.  See United States v. Odebrecht, 16-CR-643 (RJD); United States v. Braskem, 16-CR-643 (RJD).

With respect to the above-captioned case, the government's investigation determined that between approximately August 2009 and September 2015, Luis Martinelli Linares and his brother Ricardo Alberto Martinelli Linares ("Ricardo Martinelli Linares"), together with others, conspired to facilitate the payment of bribes from Odebrecht to Panama Government Official and to conceal and spend the proceeds of that criminal conduct in the United States.  During this time, Odebrecht won and maintained billions of dollars in contracts from the government of Panama for several of the country's highest profile public works projects, including a project that was a signature campaign promise of Panama Government Official.  Beginning in approximately 2009, Luis Martinelli Linares, along with Ricardo Martinelli Linares, opened and managed secret bank accounts held in the names of shell companies in foreign jurisdictions for the sole purpose of receiving, transferring, concealing and spending bribe payments that Odebrecht made for the benefit of Panama Government Official.  Luis Martinelli Linares and Ricardo Martinelli Linares served as the signatories on the shell company bank accounts in Switzerland that initially received the bribes, and they authorized wire transfers through a structure of shell company bank accounts to conceal and spend the bribery proceeds.  In total, the shell company bank accounts opened and controlled by the defendant received approximately $28 million in bribe proceeds from Odebrecht for the benefit of Panama

Government Official, $19 million of which were transferred through correspondent bank accounts in the United States.

Luis Martinelli Linares and Ricardo Martinelli Linares also conducted financial transactions to and through the United States to conceal the bribery proceeds, and Luis Martinelli Linares engaged in monetary transactions using the proceeds of the bribery scheme. Many of these financial transactions were in U.S. dollars and were made through U.S. banks, some of which were located in New York. The defendant personally spent millions of dollars from the Odebrecht bribe payments in the United States, including to purchase a yacht in 2013 and a luxury condominium in Miami in 2015.

On February 4, 2021, a grand jury sitting in the Eastern District of New York returned a five-count indictment (the "Indictment") charging Luis Martinelli Linares and Ricardo Martinelli Linares[1] with money laundering offenses for the above-described criminal conduct. Both defendants are charged with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) and two substantive counts of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Luis Martinelli Linares is also charged with two counts of engaging in transactions in criminally derived property, in violation of 18 U.S.C. § 1957.

The government's charges against the defendant are based on, among other things, the following evidence: (1) foreign bank records for accounts that were used by Luis Martinelli Linares to receive, conceal, and transfer the bribe payments from Odebrecht for the benefit of Panama Government Official; (2) U.S. bank records evidencing the use of U.S. correspondent banks for the bribe payments and the further transferring of those funds to conceal their illegal nature and source; (3) U.S. bank records and corporate receipts evidencing the spending by Luis Martinelli Linares of bribe proceeds to purchase a yacht and a luxury condominium in the United States; (4) email records and other corporate records from Odebrecht corroborating the scheme; and (5) witness statements of former Odebrecht employees and agents. The government is also in possession of voluminous records from the secret electronic database that the Division of Structured Operations used to communicate and maintain records regarding the slush funds and bribes paid on behalf Odebrecht. This database contains email communications, payment information, wire transfer requests, bank records and other records detailing the scheme and specifically the bribes that were paid to benefit Panama Government Official to bank accounts associated with Luis Martinelli Linares. The above-described evidence, among other evidence, demonstrates Luis Martinelli Linares's participation in a scheme to assist Odebrecht in making approximately $28 million in bribe payments to benefit Panama Government Official, and steps the defendant took to further transfer, conceal, and spend those bribery proceeds.

---

[1] Ricardo Martinelli Linares was arrested along with Luis Martinelli Linares on July 6, 2020 in Guatemala, pursuant to a provisional arrest request that the United States submitted to Guatemala for this same conduct. The United States is currently seeking Ricardo Martinelli Linares's extradition.

B.     The Defendant's Flight from Prosecution

Following Odebrecht's guilty plea in December 2016, Luis Martinelli Linares, who was then living in the United States, met with the government on numerous occasions in connection with its ongoing investigations related to Odebrecht. The defendant and Ricardo Martinelli Linares also engaged in plea discussions with the government through counsel. By in or about June 2020, those plea discussions had advanced to the stage that the government and counsel for the defendants were exchanging drafts of plea documents and discussing the logistics of pleas by the defendants to charges related to the criminal conduct detailed above.

On or about June 25, 2020, the government learned that Luis Martinelli Linares and Ricardo Martinelli Linares had—without any notice to the government—traveled by an unknown vessel to the Bahamas, evading United States border controls, and then boarded a private jet to fly to Panama. Luis Martinelli Linares's wife and children accompanied him on this trip, and it appeared the travel had been carefully planned in advance, given the surreptitious nature of the complex plans. However, the private jet was turned away from Panama due to COVID-19 travel restrictions; it first landed in Costa Rica on an emergency approval, and then made an authorized landing in El Salvador. In the meantime, the government filed a criminal complaint charging the defendants for the above-described criminal conduct, and arrest warrants for both defendants were issued from this district.

Luis Martinelli Linares then left his family at a hotel in San Salvador, El Salvador and traveled with Ricardo Martinelli Linares by Uber to the border with Guatemala, which was not permitting visitors into the country at that time due to COVID-19 travel restrictions. The defendants overcame the ban by presenting diplomatic credentials at the border, falsely representing themselves as officials of the Central American Parliament to gain entry to Guatemala. The government sought their apprehension in Guatemala through formal treaty processes, and on or about July 6, 2020, both defendants were arrested at el Aeropuerto Internacional la Aurora in Guatemala City, Guatemala as they were attempting to board their family's private jet to Panama.

Following Luis Martinelli Linares's arrest in Guatemala, the government submitted a full extradition request to Guatemalan authorities. Over the past year and a half, the defendant fought his extradition to the United States through extended litigation, multiple recusal motions and appeals. On May 17, 2021, after several preliminary appeals were dismissed, the Guatemalan Fifth Criminal Sentencing Court granted the request by the United States to extradite Luis Martinelli Linares. On June 21, 2021, the Guatemalan Court of Appeals, Criminal Branch affirmed the ruling of the Guatemalan criminal court granting extradition. On October 15, 2021, the Guatemalan Ministry of Foreign Affairs notified the United States, via diplomatic note, that the extradition was final and that Luis Martinelli Linares was ready for surrender to the United States. On November 15, 2021, the defendant was removed to the United States.

II.       The Defendant is a Proven and Substantial Flight Risk and Should Be Detained

    A.    Applicable Law

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e) (detention warranted where "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the defendant, and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The government is entitled to present evidence by way of proffer. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same). As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

    B.    Argument

The evidence proffered by the government demonstrates by a preponderance of evidence that Luis Martinelli Linares is a significant and demonstrated flight risk, and should be detained.

        1.    The Seriousness of the Charges and the Strength of the Evidence

The evidence in this case is overwhelming. As detailed above, the government has collected bank records, emails, and other corporate records showing that Luis Martinelli Linares (1) opened and managed shell company bank accounts in Switzerland which were used to receive bribe payments from Odebrecht to benefit Panama Government Official; (2) opened

5

and managed additional offshore shell company bank accounts which were used to further transfer and conceal the bribe proceeds; and (3) used some of the bribe proceeds for his own personal benefit by purchasing a yacht and a luxury condominium in the United States.  In addition to the documentary evidence, the government has witnesses who will testify about the defendant's knowledge of and role in facilitating bribe payments on behalf of Odebrecht to benefit Panama Government Official, and the defendant's knowledge that he and Ricardo Martinelli Linares would personally receive funds from those bribe payments.  Set against the background of Odebrecht's billions of dollars in high-profile public contracts and the defendant's close familial relationship to Panama Government Official, these documents and witnesses demonstrate clearly that the defendant knowingly and willfully laundered tens of millions of dollars in corrupt payments over many years.

These crimes are extremely serious.  Calculating the losses caused by the defendant and his co-conspirators under the United States Sentencing Guidelines ("USSG" or the "Guidelines"), the government estimates that if convicted of any of the charges at trial, the defendant's applicable total offense level would be 34.[2]  Assuming a Criminal History Category of I, Luis Martinelli Linares would face a recommended Guidelines' sentence of 151 to 188 months imprisonment.

2. <u>The Defendant Previously Sought to Flee Prosecution in the United States</u>

As detailed above, at the time of his flight from the United States in June 2020, Luis Martinelli Linares had met with the government multiple times and had engaged in extensive plea negotiations that were close to being finalized to resolve the very criminal conduct at issue in this case.  As a result, he was well aware of the nature of the charges he would be facing and the strength of the evidence already gathered in the United States.  Just two days after the government had communicated with his attorneys regarding some final terms for the plea agreement, Luis Martinelli Linares, along with his family and Ricardo Martinelli Linares, slipped out of the United States, without any notice, in a country-hopping effort involving boats, private planes and invalid diplomatic credentials, in an effort to get to Panama and escape prosecution in the United States.  Once apprehended in Guatemala, Luis Martinelli Linares then spent a year and a half fighting his extradition back to the United States at every turn.  The defendant finally acquiesced following an appellate decision by a Guatemalan court confirming his extradition order.

Given Luis Martinelli Linares's actions over the past several years, it is clear that he will take extreme measures to avoid prosecution in the United States and return to Panama, and has access to the resources to do so.  His actions in June 2020—undertaking an elaborate scheme to flee from the United States with his family during plea discussions, evade U.S. and Guatemalan border controls, and return to Panama by private jet—are alone sufficient to demonstrate by a preponderance that he represents a significant flight risk, as they demonstrate

---

[2] Based on the government's estimate, the defendant would be subject to a base offense level of 8 (USSG § 2S1.1(a)(2)), and enhancements for a loss amount of more than $25 million (USSG § 2B1.1(b)(1)(L)), money laundering (USSG § 2S1.1(b)(2)(B)) and the use of sophisticated means (USSG § 2S1.1(b)(3)).

this defendant's extraordinary ability and willingness to take the same actions again if given the opportunity.

### 3. The Defendant Lacks Ties to the EDNY, and Has Significant Financial Resources and Foreign Political Connections

Luis Martinelli Linares is a citizen of both Panama and Italy, and holds passports from both countries. He is the close relative of the former high-ranking Panama Government Official, the recipient of the bribes at issue in this case, and has extensive political connections in Panama.[3] The defendant's family is also believed to reside in Panama, having left the United States with him in June 2020 when he sought to evade this prosecution. The defendant has no known ties to the Eastern District of New York, including no familial ties, assets or known employment.

The defendant also has access to significant financial resources. Luis Martinelli Linares is a member of a family in Panama with an enormous fortune. The defendant's family owns a large and successful retail chain in Panama as well as other businesses and investments. In 2009, the defendant became president of the retail chain, and he continued in a leadership role until at least 2017. As detailed above, the defendant has access to a private plane owned by his family, which he previously used in an effort to return to Panama to evade prosecution in the United States.

Given the defendant's lack of any ties to the Eastern District of New York, his substantial foreign ties and strong political connections in Panama, and his considerable financial resources and access to a private plane—in addition to the fact that he has already fled in order to avoid prosecution in this case—he is a significant flight risk.

### 4. The Defendant Is a Citizen of Panama, Which Does Not Extradite its Own Citizens

Luis Martinelli Linares is a citizen of Panama, a country that does not extradite its citizens.[4] As a result, if the defendant were to succeed in fleeing to Panama, the U.S. government would be unable to extradite him. Courts in this circuit and other circuits have routinely found similarly-situated defendants—i.e., individuals who were charged in foreign corruption and fraud cases who were citizens of countries that did not extradite its citizens—to pose a risk of flight, and as a result ordered pre-trial detention. See, e.g., United States v. Boustani, 18-CR-681(WFK), Docket Entry 39 (E.D.N.Y. 2018) (in a fraud and bribery case, holding that the seriousness of the charges, along with the defendant's wealth and Lebanese citizenship with ties to countries without extradition, warranted detention, despite the defendant's offer of a significant cash bond and virtual private prison provided at the defendant's

---

[3] The government has provided additional information about Panama Government Official in a separate sealed filing.

[4] See Panamanian Constitution, Article 24 (prohibiting extradition of Panamanian nationals).

7

own cost); United States v. Thiam, 17-CR-47 (VM), Docket Entry 24 (S.D.N.Y. 2017) (ordering pretrial detention based on the seriousness of the case and the evidence against the defendant, the defendant's financial resources, and the defendant's citizenship in France, a country that does not extradite its citizens although the defendant was also a citizen of the United States and a resident of New York); United States v. Pierucci, 12-CR-238 (JBA), Docket Entries 31 and 75 (D. Conn. 2013) (ordering pre-trial detention based on the seriousness of the case and the evidence against the defendant, the defendant's lack of ties to the United States and defendant's French citizenship, although the defendant had lived and worked in Connecticut years before he was arrested); United States v. Cevallos, 19-CR-20284 (RS), Docket Entry 36 (S.D. Fla. 2019) (ordering pretrial detention based on seriousness of the case and the evidence against the defendant, the defendant's financial resources, and the defendant's citizenship in Ecuador, a country that does not extradite its citizens, although the defendant had resided in the United States for about three years); United States v. Reyes, 17-CR-20747 (KMW), Docket Entry 20 (S.D. Fla. 2017) (ordering pretrial detention based on seriousness of the case and the evidence against the defendant, the defendant's financial resources, and the defendant's strong ties to and citizenship in Ecuador, a country that does not extradite its citizens although the defendant had resided in the U.S. for over a year with his family); United States v. Schmidt, 16-CR-20394 (SFC) Docket Entry 73 (E.D. Mich. 2017) (affirming magistrate's order of pretrial detention of the defendant, a German citizen, in the Volkswagen diesel emissions matter, based in part on his citizenship in Germany, a country that does not extradite its citizens, notwithstanding the defendant's minimal ties to the U.S.). The same outcome is warranted here.

III.   Conclusion

      For the reasons stated above, the government respectfully submits that the Court should enter a permanent order of detention for Luis Martinelli Linares.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Alixandra Smith
Assistant U.S. Attorney
(718) 254-6370

| | |
|---|---|
| JOSEPH S. BEEMSTERBOER<br>Acting Chief, Fraud Section<br>Criminal Division<br>Department of Justice | DEBORAH L. CONNOR<br>Chief, Money Laundering and Asset<br>Recovery Section, Criminal Division<br>Department of Justice |
| By:<br>    /s/<br>Michael Culhane Harper<br>Trial Attorney<br>(202) 616-5224 | By:<br>    /s/<br>Michael B. Redmann<br>Barbara Levy<br>Trial Attorneys<br>(202) 436-6891 |

cc:   The Honorable Raymond J. Dearie (by ECF and email)
     James G. McGovern, Esq. (by ECF and email)