**Hogan Lovells**

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

November 15, 2021

**BY ECF AND HAND**

The Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> RE:   **United States v. Luis Enrique Martinelli Linares**, 21 Cr. 65 (RJD)

Dear Judge Henry:

We represent Luis Enrique Martinelli Linares ("Luis Martinelli"). He and his brother, Ricardo Alberto Martinelli Linares ("Ricardo Martinelli") (together, the "Martinelli brothers"), are co-defendants in the above-captioned case arising out of a scheme by the Brazilian conglomerate Odebrecht to bribe a high-ranking government official in Panama (hereinafter, the "Panama Government Official"), between 2009 and 2014. Luis and Ricardo Martinelli have agreed to plead guilty to a single count of money laundering conspiracy. They have waived extradition and agreed to travel to the United States from Guatemala (where they have been detained for more than sixteen months) to accept responsibility for their offenses, enter guilty pleas, and proceed to sentencing.

Despite this commitment to travel to the United States to enter a guilty plea, the government has declined to discuss the terms of an appropriate bail package. Instead, the government has indicated that it will oppose bail and seek to remand the Martinelli brothers to jail, pending sentencing. We respectfully submit that there are bail conditions that can reasonably ensure Luis Martinelli's appearance in court for the period after which he enters his guilty plea and until he is sentenced.

**I.     Background**

> A. The Broader Context: The *Odebrecht*, *Braskem*, and *Grubisich* Cases

This case arises from, and sits on the periphery of, a broader series of investigations and prosecutions concerning bribes paid by two Brazilian companies to politicians across Central and Latin America between 2001 and 2016. *See generally, e.g.*, Govt. Sentencing Mem., *United States v. Odebrecht S.A.*, 16-CR-643 (RJD), Dkt. 15 at 2 (E.D.N.Y. Apr. 11, 2017) ("Odebrecht, along with its co-conspirators, paid approximately $788 million in bribes in association with more than 100 projects in twelve countries, including Angola, Argentina, Brazil, Colombia,

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C. Associated Offices: Budapest Jakarta Riyadh Shanghai FTZ Ulaanbaatar. Business Service Centers: Johannesburg Louisville. Legal Services Center: Berlin. For more information see www.hoganlovells.com

Dominican Republic, Ecuador, Guatemala, Mexico, Mozambique, Panama, Peru and Venezuela," and "received approximately $3.336 billion in ill-gotten benefits").

Last month, the Honorable Judge Dearie sentenced Jose Carlos Grubisich, the former CEO of the Odebrecht subsidiary Braskem, to twenty months imprisonment. *United States v. Grubisich*, 19 Cr. 102 (RJD), Dkt. 102 (E.D.N.Y. Oct. 25, 2021). After receiving credit for his four months of pretrial detention, *see* 18 U.S.C. § 3585(b), Mr. Grubisich will serve sixteen months (less any good-time credit) for "knowingly and willfully participat[ing] in a conspiracy to divert hundreds of millions of dollars from Braskem into a secret illegal slush fund and to pay bribes to government officials, political parties, and others in Brazil to obtain and retain business." Govt. Sentencing Mem., *Grubisich*, Dkt. 97 at 1.

B.  The Martinelli brothers' cases

For the past several years, the Martinelli brothers have been the subject of various United States, Panamanian, and other foreign investigations concerning their role as intermediaries in one offshoot of Odebrecht's fifteen-year bribery campaign: a scheme to bribe the Panama Government Official.

In February 2017, Panamanian officials indicted the Martinelli brothers on money laundering charges. At the time, the brothers were living openly in the United States where, beginning the next year, they began meeting voluntarily with federal prosecutors concerning the United States' investigation.

In November 2018, the brothers were detained by ICE in Florida on immigration allegations. After their arrest, Panamanian officials stated publicly that they intended to seek the extradition of the Martinelli brothers to face pending charges in Panama. The brothers were ultimately released from ICE detention on bail and they remained in the United States, where they continued meeting with federal officials to discuss the investigation.

The COVID-19 pandemic began in, in earnest, in the United States in March 2020. In the ensuing months, the enormity and expected length of the related lockdowns became ever clearer. With their counsel continuing to negotiate with federal prosecutors about a potential resolution ahead of the filing of any United States charges, the brothers made a serious and ill-considered mistake. Seeking to be reunited with their family, and to defend themselves against the pending Panamanian charges, the brothers attempted to travel home to Panama. At the time of their departure from the United States, no U.S. charges had been filed against the brothers. (The United States filed a *sealed* criminal complaint against Luis and Ricardo Martinelli on June 27, 2020, which stated that the brothers were then "at liberty." *See United States v. Luis Enrique Martinelli Linares and Ricardo Alberto Martinelli Linares*, 20-MJ-498 , Dkt. 1 (E.D.N.Y. June 27, 2020).

On July 6, 2020, the Martinelli brothers were arrested at the airport in Guatemala City, Guatemala, as they attempted to board a flight to Panama. They have been detained at a Guatemalan prison for the ensuing sixteen months.

While detained in Guatemala, the brothers litigated an issue that had long been a source of considerable uncertainty in the multinational investigations: the extent to which their uncontested status as elected members of the Central American Parliament ("Parlacen") rendered them immune from certain legal process, including the Guatemalan detention that interrupted their attempted return home to face the pending charges against them in Panama.

From prison in Guatemala, the brothers remained engaged with United States authorities through the undersigned counsel, who were retained in April 2021, and through Kaplan Hecker & Fink LLP, who were retained as counsel in July 2020 following the brothers' detention. Through the undersigned and co-counsel, Luis Martinelli and his brother, Ricardo, resumed negotiations for a plea agreement that would resolve the pending United States investigation. The brothers ultimately withdrew the Guatemalan litigation concerning the implications of their parliamentary immunity, and later reached an agreement in principle with the United States authorities to plead guilty to one count of an indictment filed in February 2021.

The contemplated agreement includes a guilty plea to one count of a money laundering conspiracy under 18 U.S.C. § 1956(h), and consent to the forfeiture of a nearly $19 million money judgment and additional forfeitable assets. The forfeitable assets include a considerable amount of funds held in Swiss banks that would have been exceptionally difficult to recover without the Martinelli brothers' agreement to plead guilty and to take affirmative steps to facilitate the United States' access to these funds. And indeed, the Martinelli brothers have taken steps to wire the U.S. currency portion of the plea agreement's consented forfeiture to United States authorities ahead of their arrival in the United States. Further, the Martinelli brothers, in anticipation of a potential plea agreement, separately consented to the release and transfer of nearly $1.7 million in funds to the U.S. government over three months ago.

Luis Martinelli has arrived in the United States. His brother, Ricardo, is expected to arrive in the United States shortly (the exact date of Ricardo's arrival is uncertain due to the vagaries of the Guatemalan exit process). Ahead of their arrival, Mr. Martinelli's counsel secured both immediate and longer-term housing near the Eastern District courthouse, and has asked the government to negotiate a reasonable bail package that would, consistent with the demands of the Bail Reform Act, permit Mr. Martinelli and his brother's release under conditions sufficient to guarantee their appearance. (It is uncontested that the brothers do not pose risks to public safety.) The government has refused to negotiate any bail package and has instead communicated to counsel that it will move this Court for remand.

We present a proposed bail package below, and outline why remand to jail under these circumstances would be inconsistent with the law.

## II. Mr. Martinelli's Proposed Conditions of Pre-Sentencing Release

Mr. Martinelli has returned to the United States to enter a guilty plea and proceed to sentencing. With reference to outcomes in comparable cases, and in consideration of the sixteen months that Mr. Martinelli has served in Guatemalan detention, counsel intends to seek a sentence of time served.

Simply put, it would make no sense for Mr. Martinelli and his brother to travel to the United States, plead guilty to a federal crime, and then flee from charges to which they had just allocuted, only to return to Panama where they can expect neither refuge nor immunity, but rather, additional criminal exposure that would be exacerbated by fugitivity from the nearly resolved United States case. For these reasons, Mr. Martinelli is not likely to flee. But for the avoidance of any reasonable doubt, we propose the following strict conditions of pre-sentencing release as the "least restrictive…combination of conditions" that will "reasonably assure [his] appearance…as required." 18 U.S.C. § 3142(c). We note again that the government refused even to discuss any proposed bail package.

- A $3 million personal recognizance bond, secured by $1 million in cash from Mr. Martinelli. Additional security will be offered by a financially responsible co-signer who will be posting their equity interest in certain real property to bring the collateral close, if not equal, to the full amount of the bond.

- Home confinement, subject to a curfew, at an apartment that Mr. Martinelli has secured in Manhattan. (Counsel has secured both an immediate, short-term rental, as well as a longer-term lease that will commence in December 2021.)

- Pretrial supervision as directed by Pretrial Services.

- Travel restricted to the SDNY and EDNY, with the surrender of any existing travel documents and no applications for additional travel documents.

- Any additional conditions the Court deems reasonably necessary.

## III. The Bail Reform Act Compels Mr. Martinelli's Pre-Sentencing Release

A. Legal Standard

Mr. Martinelli's pre-sentencing detention or release is governed by 18 U.S.C. § 3143, a provision of the Bail Reform Act.

If a defendant rebuts Section 3143's presumption in favor of pre-sentencing detention, "the statute establishes a right to liberty that is not simply discretionary but mandatory." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). Under Section 3143, if "the judicial officer finds by clear and convincing evidence that [a post-plea, pre-sentencing defendant] is not

*likely* to flee or pose a danger," the Court "*shall* order the release of the person in accordance with [18 U.S.C. §] 3142(b) or (c)." 18 U.S.C. § 3143(a)(1) (emphases added).[1]

Section 3142(b) and (c), in turn, authorize the release of such a defendant either solely on a bond, 18 U.S.C. § 3142(b), or "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c).

### B. Mr. Martinelli is "Not Likely to Flee" After Traveling to the United States to Plead Guilty

As a matter of common sense, Mr. Martinelli is manifestly "not likely to flee" the United States after traveling here to enter a guilty plea before this Court. The government will be unable to provide any plausible theory under which Mr. Martinelli does anything other than fatally undermine his legal and financial interests by departing the United States after arriving to plead guilty but before imposition of his sentence.

Leaving the United States before sentencing on his guilty plea would draw a permanent strike through Mr. Martinelli's acceptance of responsibility and any resulting sentencing consideration he might receive in this country. And Mr. Martinelli would obtain neither refuge nor immunity if he were to return to Panama in a manner that caused the revocation of his United States plea agreement. He faces long-pending and related criminal charges in Panama, and would extinguish a colorable opportunity to secure Panamanian double jeopardy protection and effect a resolution of both pending cases if he were to scuttle his United States plea agreement with pre-sentencing flight.

Mr. Martinelli's previous departure from the United States *before* the filing of any United States criminal charges certainly does not mean he is "likely to flee" *after* pleading guilty. His prior departure came during an earlier stage of plea negotiations – not after he had allocuted to a crime in federal district court. Leaving the United States after pleading guilty in this Court would have entirely different and permanent consequences, none of which would inure to Mr. Martinelli's benefit. There is no rational argument by which Mr. Martinelli stands to gain by surreptitiously leaving the United States after pleading guilty. As such, he is manifestly "not likely to flee."

### C. It Is Common for White-Collar Defendants to be Released Pending Sentencing

Courts commonly grant bail pending sentencing to white-collar and other nonviolent defendants. That is because pre-sentencing detention cannot be justified by punitive or retributive motives. It serves only to mitigate a likelihood (not merely a possibility) of pre-sentencing flight, where "*no* condition or combination of conditions will reasonably assure the

---

[1] In a provision inapplicable to the contemplated guilty plea in this case, Section 3143 provides a higher standard for the pre-sentencing release of defendants found guilty of certain offenses involving violence, sex trafficking, terrorism, or several others of the most serious or dangerous federal crimes. *See* 18 U.S.C. § 3143(a)(2).

5

appearance of the person as required." 18 U.S.C. § 3142. If a guilty defendant marshals a "clear and convincing" argument that he is "not likely to flee," 18 U.S.C. § 3143, he has "a right to liberty that is not simply discretionary but mandatory." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).

For this reason, courts have granted conditional pre-sentencing release even in the highest-profile, most notorious white-collar prosecutions in American history. *See, e.g.*, Mark Hamblett, *Dreier Pleads Guilty to Fraud Scheme, Remains Free on Bail*, N.Y.L.J., May 12, 2009, available at https://www.law.com/almID/1202430626494 (describing Marc Dreier's pre-sentencing release following a guilty plea to eight counts of money laundering, securities fraud, wire fraud, and a related conspiracy); *United States v. Rajaratnam*, No. 09-CR-1184 (RJH), Dkt. 272 (S.D.N.Y. May 11, 2011) (ordering Raj Rajaratnam released pending sentencing following jury verdicts of guilty on fourteen counts arising out of a securities fraud); John R. Emshwiller et al, *Lay, Skilling Convicted of Fraud*, Wall St. J., May 26, 2006, *available at* https://www.wsj.com/articles/SB114789594247955693 (noting that both Enron executives Lay and Skilling "remain[ed] free pending sentencing" despite "[e]ach fac[ing] many years in prison").

This District's cases feature similar results. In *United States v. Mark Johnson*, Judge Garaufis granted the defendant's motion for the *expansion* of his pre-trial release conditions pending sentencing in view of, among other things, the "serious harm that flight would inflict" on the defendant's bond co-signers, and "the potential sentencing and appellate consequences of any flight." *United States v. Johnson*, No. 16-CR-457-1 (NGG), 2017 WL 11563342, at *2 (E.D.N.Y. Dec. 13, 2017); *see also, e.g.*, *United States v. Espada*, No. 10-CR-985 (FB), Minute Entry, May 14, 2012 (ordering that state official convicted on various corruption charges "shall remain on the same bail conditions until the re-trial [on certain mistrial counts] and sentencing on the convicted counts"). Similar factors counsel in favor of pre-sentencing release here. Not only would Mr. Martinelli immediately lose the $1 million he has proposed to post as security for his bond, but any potential flight would be financially ruinous to the close friends who quickly volunteered to post their own property to secure his pre-sentencing liberty. What is more, flight would obliterate Mr. Martinelli's ability to reap any of the sentencing benefits of his guilty plea: as a fugitive, he would be disentitled from making any sentencing or other arguments through his U.S. counsel if he were to unlawfully flee.

Nor does Mr. Martinelli's case present any of the circumstances that courts in the Second Circuit have tended to rely on in denying pre-sentencing release. Some of these circumstances are exceedingly rare. *See, e.g.*, *United States v. Cubangbang*, No. (S1) 18 Cr. 601 (PGG), 2020 WL 1905591, at *5 (S.D.N.Y. Apr. 17, 2020) (finding mid-trial revocation of a cooperation agreement increased risk of post-conviction flight and undermined Section 3143 application). Others are plainly inapplicable. For example, in denying Bernie Madoff pre-sentencing release, Judge Chin cited just one factor: Madoff's old age. "In light of Mr. Madoff's age, he has an incentive to flee, he has the means to flee, and thus, he presents a risk of flight." Plea Hearing Tr., *United States v. Madoff*, No. 09-CR-213 (DC) (S.D.N.Y. Mar. 12, 2009). Unlike Madoff,

6

whose age and health "provide[d] a greater incentive to flee because [he] may potentially reclaim his liberty for only a small period of his life," *United States v. Madoff*, 316 Fed. App'x 58, 59 (2d Cir. 2009), Mr. Martinelli is only 39 years old. He has a long life ahead of him, and a reputation to repair. All of his incentives point toward making a robust sentencing argument, accepting whatever punishment this Court sees fit to impose, and resolving this case with finality.

Indeed, unlike even many defendants who have been granted pre-sentencing release, Mr. Martinelli has a good basis for seeking a sentence of time served. He and his brother have spent more than sixteen months in detention in Guatemala for the same offenses giving rise to their forthcoming United States guilty plea. 18 U.S.C.A. § 3585 (b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--(1) as a result of the offense for which the sentence was imposed…that has not been credited against another sentence"); *see* 2017 National Seminar on the Federal Sentencing Guidelines, *Federal Sentence Computation & Interaction of Federal and Non-Federal Sentences*, at 2-3, *available at* https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training seminar/2017/BOP_FSS.pdf (explaining that the "[l]ocation of presentence detention (federal, state, or foreign) is not relevant in deciding whether prior custody credit will be awarded" pursuant to § 3585(b)). And last month, the Honorable Judge Dearie sentenced Jose Carlos Grubisich, the longtime CEO of Braskem, one of two Brazilian corporations convicted of overseeing the much-larger bribery scheme in which Mr. Martinelli and his brother played a peripheral role, to twenty months of imprisonment. *United States v. Grubisich*, 19 Cr. 102 (RJD), Dkt. 102 (E.D.N.Y. Oct. 25, 2021).

This is therefore quite the opposite of a case where pre-sentencing release is denied because a defendant "faces the prospect of a long imprisonment that very likely may make him reluctant to willingly submit to incarceration." *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 3410015, at *2 (S.D.N.Y. July 12, 2018), *aff'd* 738 F. App'x 32 (2d Cir. 2018). To the contrary, pre-sentencing flight would *increase* Mr. Martinelli's odds of having to "submit to incarceration" – in Panama, where he faces related criminal charges that he hopes to address as a part of a global resolution with Panamanian and United States authorities. Becoming a United States fugitive and having his plea agreement revoked would heighten Mr. Martinelli's risk of spending time in Panama's notoriously dangerous prisons. *See* U.S. State Department, *Panama 2020 Human Rights Report*, at 2, *available at* https://www.state.gov/wp-content/uploads/2021/10/PANAMA-2020-HUMAN-RIGHTS-REPORT.pdf (noting that "[p]rison conditions remained harsh [in 2020], due to overcrowding, insufficient internal security, a shortage of prison guards, and inadequate medical services and sanitary conditions.").

## Conclusion

Mr. Martinelli has traveled to the United States to enter a guilty plea. By accepting responsibility in a United States court for conduct that also underlies pending criminal charges in Panama, Mr. Martinelli reasonably aims to effect a resolution of both his pending U.S. and Panamanian cases. He will allocate in this Court to serving as an intermediary for bribes paid by

Odebrecht and related entities to the Panama Government Official, and thereby participating in a money laundering conspiracy in violation of U.S. law.  Shortly thereafter, his counsel will present arguments for an appropriate sentence that reflects the seriousness of his offense while avoiding unwarranted disparities with defendants found guilty of similar conduct.  There is no coherent theory by which Mr. Martinelli stands to gain more than he clearly will lose should he flee between accepting responsibility and receiving his sentence.  In view of the government's steadfast commitment to remanding Mr. Martinelli to jail, we seek the Court's consideration of our proposed bail package in advance of Mr. Martinelli's forthcoming plea hearing.

Respectfully submitted,

/s/ James G. McGovern
James G. McGovern
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
Tel.: 212-918-3000
Fax: 212-918-3100
james.mcgovern@hoganlovells.com

*Counsel for Defendant Luis Enrique Martinelli Linares*