

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 18, 2022

By Hand and ECF

The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Luis Enrique Martinelli Linares
                 and Ricardo Alberto Martinelli Linares
                 Criminal Docket No. 21-65 (RJD)

Dear Judge Dearie:

        The government respectfully submits this letter in advance of the sentencing hearing scheduled for May 20, 2022 for the defendants Luis Enrique Martinelli Linares ("Luis Martinelli Linares") and Ricardo Alberto Martinelli Linares ("Ricardo Martinelli Linares") to briefly respond to certain arguments made in the joint reply memorandum filed by the defendants on May 13, 2022.  (See ECF No. 60, Defendants' Joint Reply Memorandum ("Def. Mem.")).

        First, the defendants contend that the government unfairly understates the value of their attempted cooperation in this case, and argue that the defendants should be credited by the Court for providing "virtually all of the substantial evidence that incriminated them," for "repatriating funds that might otherwise be beyond the government's reach" and for entering into an "unusually detailed factual proffer" in connection with their guilty plea.  (Def. Mem. 3, 4).  To the contrary, the government has stated that the defendants did provide information useful to the government's investigation; the core of the government's argument is that despite providing such information, the defendants did not engage in the cooperation process in good faith, failed to disclose key information and ultimately sought to use their privilege, wealth and power to thwart the investigation and avoid taking responsibility for their actions in the United States.  Moreover, as detailed in the government's sentencing submission, the government's investigation yielded substantial independent evidence of the defendants' guilt (see ECF No. 56 at 4, ECF No. 57 at 4), and by the defendants' own admission, their efforts to repay their ill-gotten criminal proceeds by assisting the government in locating and obtaining assets—many of which they themselves moved into offshore accounts in furtherance of the scheme—did not begin until after they were arrested following their flight from the United States, and did not result in any repatriation until recently.  Finally, the defendants made "unusually detailed factual

proffer[s]" in connection with their guilty pleas because the <u>defendants</u> requested to make such proffers, so that it would be clear to the authorities in Panama the scope of the conduct covered by their pleas in the United States.

<u>Second</u>, the defendants contend that a $9.5 million investment in a cellphone company described in the government's sentencing memoranda was made "with Panama Government Official's ill-gotten funds, at Panama Government Official's direction, and for Panama Government Official's benefit," and that the government does not distinguish between funds that passed "through, but [were] not for" the defendants. (Def. Mem. 5). To be clear, the accounts that were used to receive and subsequently launder the almost $28 million in bribes were in the names of and controlled by the defendants, who used those accounts to make millions of dollars in personal expenditures for themselves, and who retained a significant portion of those funds in those accounts (which is why they were able to repatriate them for forfeiture purposes). The government is not aware of any credible evidence that the defendants themselves did not benefit from additional expenditures from those accounts or that such expenditures were made solely for the benefit of Panama Government Official.



<u>Fourth</u>, the defendants contend that they were in fact "elected as alternate deputies to Parlacen" in 2019. (Def. Mem. 6). The government has seen no evidence that their election to PARLACEN was legitimate, and the evidence that the defendants did not hold valid PARLACEN credentials includes the fact that they lost appeals in Guatemala grounded on their alleged diplomatic status. Successful or not, the defendants' attempts to get PARLACEN credentials are significant because they occurred in 2019, at the same time the defendants were allegedly cooperating with the government; were not reported to the government; appear to be part of their efforts to avoid prosecution in the United States and/or Panama through diplomatic privilege; and were in fact used to aid in their flight and resistance to extradition.

<u>Finally</u>, the defendants argue at length that a Guidelines sentence in this case is improper primarily because it is the defendants' claim that such a sentence would "deviate radically from those [sentences] imposed on similarly culpable defendants" in the Second Circuit

and elsewhere. (Def. Mem. 1). As an initial matter, the Court is bound to make a determination of the proper sentences for the defendants based on an individualized determination of the specific facts and circumstances of this case and these defendants. Moreover, even the cases cited by the defendants do not suggest that a Guidelines sentence here, where the defendants pled guilty to conspiracy to commit money laundering for receiving, concealing and benefiting from $28 million in criminal proceeds and for which no significant mitigating factors exist, is inappropriate. For example, the defendants cite as a comparable case United States v. Inniss, 18-CR-134 (E.D.N.Y.) (KAM), in which Judge Matsumoto sentenced the defendant, a public official in Barbados, to 24 months' incarceration. (Def. Mem. 8). But Inniss accepted only two bribes in an approximately one-year period that totaled $36,000, which by any measure is conduct on a completely different scale than the criminal conduct that the defendants engaged in here. The defendants also note but do not discuss the case of United States v. Napout, 15-CR-252 (E.D.N.Y.) (PKC), who was convicted of money laundering and wire fraud in connection with the FIFA scheme and was ultimately sentenced by Judge Chen to 108 months' imprisonment. Napout's conduct is far more analogous to that of the defendants, as he was held responsible for a long-running bribery scheme during which he was promised a total bribe amount of $25 million, though he only actually received approximately $3.3 million.

The government will be prepared to respond to other arguments from the defendants' reply at the sentencing hearing, and, for the reasons set forth in its initial submissions, maintains that significant Guidelines sentences of incarceration are sufficient, but not greater than necessary, to achieve the goals of sentencing here. See U.S.S.G. § 3553(a)(2).

Respectfully Submitted,

BREON PEACE
United States Attorney

By: _____/s/_____
Alixandra Smith
Assistant U.S. Attorney
(718) 254-6370

DEBORAH L. CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division
U.S. Department of Justice

s/_____
Michael Redmann
Trial Attorney

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

s/_____
Michael Culhane Harper
Trial Attorney

cc:   Clerk of Court (RJD) (by ECF)
      Defense counsel (by ECF)

3